E-FILED
Monday, 16 September, 2013  01:22:58 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ROXANNA MORRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-1366 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

This matter is now before the Court on Plaintiff Roxanna Morrell's ("Plaintiff") Motion for Summary Judgment [ECF No. 13] and Defendant Commissioner of Social Security Michael J. Astrue's ("the Commissioner") Motion for Summary Affirmance [ECF No. 14].  Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the determination that she is not disabled within the meaning Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act and that she is not eligible for Disability Insurance Benefits.  The Commissioner filed a cross-motion seeking affirmance of the Administrative Law Judge's ("the ALJ") decision denying benefits. For the following reasons, Plaintiff's Motion for Summary Judgment [ECF No. 13] is DENIED and the Commissioner's Motion for Summary Affirmance [ECF No. 14] is GRANTED.

### STANDARD

The Court begins its review of the Commissioner's determination with the applicable legal standards.  To be eligible for Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"), a claimant must show that his or her inability to work is medical in nature and that he or she is totally disabled.  Economic conditions, personal factors, financial

1

considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits.  *See* 20 C.F.R. §§ 404.1566, 416.966.  In order to establish a disability under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Establishing a disability under the Act is a five-step sequential process.  The inquiry ends if at any given step the Commissioner[1] affirmatively finds that the claimant is disabled or not disabled.  However, should the ALJ not make that determination, he or she must proceed to the next step.  *See* 20 C.F.R. § 416.920(a)(4).  In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;
2) suffers from an impairment that is severe or whether a combination of her impairments is severe;
3) suffers from an impairment which meets or equals any impairment listed in the appendix[2] and which meets the duration requirement;
4) is unable to perform her past relevant work; and
5) is unable to perform any other work existing in significant numbers in the national economy. *Id.*

This Court's review is governed by 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  A Court will "review the ALJ's

---

[1] Generally, by way of an Administrative Law Judge ("ALJ").

[2] Should the claimant not qualify under one of Step Three's listed impairments, the ALJ then proceeds to Step Four to determine the claimant's Residual Functional Capacity ("RFC").  Pursuant to the claimant's RFC, the ALJ determines under Steps Four and Five whether he or she is capable of performing past work or other work available in the national economy. 20 C.F.R. § 404.1520(e)-(g).

decision deferentially." *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). "Although this standard is generous, it is not entirely uncritical, and the case must be remanded if the decision lacks evidentiary support." *Id.* (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). The Commissioner, acting through the ALJ, "is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his [or her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). It is this Court's role to view the record as a whole, but it may not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ must articulate some minimal basis for the conclusions that he or she reaches so the reviewing court may "trace the path" of the ALJ's reasoning. *Willis v. Apfel*, 116 F. Supp. 2d 971, 974 (N.D. Ill. 2000); *see also Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993).

## BACKGROUND

On September 2, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (R24). Plaintiff also filed a Title XVI application for supplemental security income on September 14, 2009. (R24). In both of her applications, Plaintiff alleged that her disability began October 15, 2008. (R24). These claims were denied initially on December 9, 2009, and upon reconsideration on April 1, 2010. (R24). Thereafter, Plaintiff filed a written request for hearing on May 11, 2010. (R24). On June 6, 2011, a video hearing was held before an ALJ, Martha R. Reeves. (R24). Amy Kutschbach, an impartial vocational expert ("VE"), was also present at the hearing. (R24). On June 17, 2011, the ALJ issued a decision based on Plaintiff's application for a period of disability and disability insurance benefits filed on September 2, 2009, that Plaintiff is not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A)

of the Social Security Act.  (R37).  In addition, the ALJ issued a decision based on Plaintiff's application for SSI filed on September 14, 2009, that Plaintiff is not disabled under the Social Security Act. (R37).  On July 18, 2012, the Appeals Council issued a decision denying review of the ALJ's decision.  (R11-16).

## HEARING TESTIMONY

Plaintiff's hearing before an ALJ was held June 6, 2011.  (R24).  Plaintiff testified that she was born on May 1, 1961.  (R36).  She was forty-seven years old at the onset of her rheumatoid arthritis.  (R29).  Plaintiff has a nursing degree and did work as a housekeeper and licensed practical nurse ("LPN").  (R29).  Plaintiff last worked in October 2008 cleaning houses, but she stopped because of pain in her hands from rheumatoid arthritis.  (R29).  The rheumatoid arthritis largely affected her hands, her joints locked up, and she could not feel objects she tried to hold.  (R30).  Sometimes, she manually moved some fingers when she could not feel or grip.  (R30).  Plaintiff also had arthritic symptoms in her shoulders, hip, knee, back, and feet.  (R30).  She experienced shoulder aching, burning, and locking and lower back pain.  (R30).  To treat her rheumatoid arthritis, Plaintiff took tramadol and Arthritis Strength Tylenol but tramadol caused dizziness and drowsiness.  (R30).

In addition to rheumatoid arthritis, Plaintiff experienced thyroid problems.  (R30).  She treated her condition with medication and received regular blood work to monitor her condition.  (R30).  The combination of thyroid problems and rheumatoid arthritis made her tired.  (R30).  She could do daily household chores for twenty minutes at a time before she rested for fifteen to twenty minutes.  (R30).  Any type of walking caused her to lie down for fifteen to twenty minutes, and she could go outside for no more than thirty minutes.  (R30).

## I.     ALJ'S WRITTEN DECISION

The following sections (pages 5-13) summarize the ALJ's written decision.  Based on the application for a period of disability and disability insurance benefits filed on September 2, 2009, the ALJ found that Plaintiff was not disabled under Section 216(i) and 223(d) of the Social Security Act.  In addition, based on the application for supplemental security income filed on September 14, 2009, the ALJ found that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act.

At step one of the evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2008.  (R26).  At step two, the ALJ found that Plaintiff had inflammatory arthritis, bilateral carpal tunnel syndrome, and lumbar disc protrusion as severe impairments.  (R26).  At step three, the ALJ determined that Plaintiff's impairments, whether considered singly or in combination, did not meet or equal any listed impairment.  (R28).  Here, the ALJ specifically considered Plaintiff's assertion that the arthritis in her hands met the requirements of Listing 14.09A2 and found that she did not.  (R28-29).  Between steps three and four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work that limited her to lifting no more than ten pounds.  (R29).  The ALJ also found that pushing and pulling was limited in Plaintiff's upper extremities, that she could stand and walk for six hours in an eight-hour day, and that for the remaining two hours, she had to be allowed to alternate between sitting and standing.  (R29).  Although the ALJ found that Plaintiff could frequently reach, she limited her to only occasional handling, feeling, and fine finger manipulation.  (R29).  The ALJ determined that Plaintiff's testimony about her allegedly disabling symptoms was not credible.  (R30).  At step four, the ALJ found that Plaintiff could not perform either of her past jobs.  (R35).  At step five, the ALJ relied on VE testimony, in

conjunction with the medical-vocational guidelines, to find that Plaintiff was not disabled because she could perform a significant number of light jobs, such as a case aid. (R36-37).

### A. ALJ's Impairment Determination

The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equalled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R28). The ALJ stated that although Plaintiff had "severe" impairments, the impairments did not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 C.F.R. Part 404, Subpart P, Appendix 1). (R28). Plaintiff's treating or examining physicians did not mention findings equal in severity to the criteria of any listed impairment. (R28). The listing required inflammatory arthritis – as described in 14.00D6 – with persistent inflammation or persistent deformity of one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. (R28). Examples of the inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level. (R28).

The ALJ found Plaintiff's difficulties with her hands did not rise to this level. (R28). For example, Plaintiff's family practitioner opined that she was limited in handling, fingering, and feeling to an occasional basis (Exhibit 11F, page 5). (R28). Plaintiff stated she could not grip or lift greater than five pounds, but she could complete fine finger manipulations bilaterally with

some pain.  (R28).  The ALJ found Plaintiff had limitations in her functioning, but Plaintiff did not show loss of effective fine and gross movements to the extent intended by the listing.  (R28).

In addition, at a consultative examination, Plaintiff was able to oppose the thumb to each finger in both hands (Exhibit 3F, page 3).  (R29).  Plaintiff's pinch strength, arm, and grip strength were 4+/5 throughout.  (R29).  Plaintiff was able to write lengthy answers in two function reports, and her handwriting remaining entirely legible (Exhibits 4E, 8E).  (R29).  She described difficulties buttoning, zippering, and tying but was able to bathe, care for personal hygiene, and feed herself (Exhibit 8E, page 2).  (R29).  Plaintiff prepared simple meals, completed laundry, vacuuming, and dusting, though at a slower pace.  (R29).  Given the overall evidence, the ALJ found that Plaintiff's inflammatory arthritis did not meet the requirements of listing 14.09A2.  (R29).

### B.  ALJ's Consideration of Specific Medical Opinions

In forming her decision, the ALJ first considered the longitudinal treatment record.  (R30).  The medical evidence showed that Plaintiff complained of knuckle swelling and pain throughout the relevant period (Exhibit 2F, page 16).  (R30).  Plaintiff's first lab workup, dated February 2008, showed a rheumatoid factor of 14 (Exhibit 2F, page 26).  (R30).  Plaintiff's family practitioner referred her for a rheumatology consultation with Dr. Dennis Ozment.  (R30).  Dr. Ozment noticed some mild swelling in the right second MCP joint.  (R30).  He reviewed her X-rays, which showed joint space narrowing within the MCP joints, particularly the second and third bilaterally (Exhibit 1F, pages 4, 5).  (R30).  She also had mild joint space narrowing within the distal interphalangeal joints.  (R30).  Dr. Ozment diagnosed Plaintiff with osteoarthritis (Exhibit 1F, page 5).  (R30).  He explained that Plaintiff had a slightly elevated rheumatoid

factor of 14, with normal being less than 14, but at that time did not believe her condition represented rheumatoid arthritis. (R30-31). Dr. Ozment prescribed Mobic in addition to Arthritis Strength Tylenol. (R31). Upon a follow-up in September 2008, Plaintiff continued to experience morning stiffness, which improved after about sixty minutes. (R31). Dr. Ozment proscribed naproxen twice a day as well as continuing Arthritis Tylenol. (R31).

The medical evidence also showed that Plaintiff saw Dr. Raymond Leung in connection with her claim on November 14, 2009. (R32). Plaintiff reported difficulties gripping things with her hands due to numbness and pain. (R32). On physical examination, she was able to pick up a penny from the table with both hands fairly well. (R32). Without assistance, she walked with a minimal limp and was able to do so for fifty feet. (R32). She was also able to tandem walk, hop, heel walk, toe walk, squat, and get on and off the examination table. (R32). Dr. Leung noted that Plaintiff had signs of rheumatoid and osteoarthritis in the hands, but she was able to manipulate a small object fairly well and her pinch and grip strength remained 4+/5. (R32). He also noted that she had not had formal testing for carpal tunnel syndrome, but she did have decreased sensation to pinprick in both hands. (R32).

In November 2009, she was prescribed Sulfasalazine, an anti-inflammatory agent, but Plaintiff filled the prescription only once. (R32). In December 2009, Dr. Ozment gave her methotrexate, an antimetabolite often prescribed for adult rheumatoid arthritis. (R32). On January 11, 2010, Plaintiff called to report she had decided not to take the methotrexate because of side effects. (R32). She reported that she was taking Tylenol Arthritis and was doing fine. (R32). When Dr. Ozment saw Plaintiff again on March 15, 2010, she reported that her morning stiffness lasted well over an hour in her hands and knees and improved only mildly with activity. (R32). Dr. Ozment prescribed hydroxychloroquine and recommended a follow-up appointment

in six months.  (R32).  Claimant refilled the medication three times but called to report that she could not take it due to side effects.  (R32).  Plaintiff continued to see Dr. Ozment for regular check-ups.  (R32-33).

In April 2011, Plaintiff's family practitioner, Monica Crim, CPRN, completed a medical source statement of Plaintiff's ability to do work-related activities (Exhibit 11F).  (R33).  Ms. Crim recommended that Plaintiff lift and carry less than ten pounds, stand or walk about six hours in an eight-hour day, and periodically alternate between sitting and standing to relieve pain or discomfort (Exhibit 11F, pages 3-4).  (R33).  She advised that Plaintiff was limited to pushing and pulling in the upper extremities (Exhibit 11F, page 4).  (R33).  Ms. Crim explained that Plaintiff has rheumatoid arthritis affecting the hands and that Plaintiff could not grip more than five pounds due to pain.  (R33).  She recommended that Plaintiff never crawl and only occasionally climb, kneel, crouch, or stoop.  (R33).  She indicated that Plaintiff should be limited in handling, fingering, and feeling to an occasional basis (Exhibit 11F, page 5).  (R33).  She recommended that Plaintiff avoid temperature extremes, vibration, humidity, wetness, and hazards (Exhibit 11F, page 6).  (R33).

### C. ALJ's Residual Functional Capacity Determination

Ultimately, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work.  (R29).  Specifically, this work was limited to lifting only ten pounds, limited to only occasional handling, feeling, and fine finger manipulation, and pushing and pulling was limited to the upper extremities.  (R29).  Plaintiff could stand and walk for six hours in an eight-hour day.  (R29).  For the remaining two hours, the Plaintiff must be allowed to alternate between sitting and standing.  (R29).

Based on the record as a whole, the ALJ found the RFC assessment to be well supported. (R33).  Given Plaintiff's history of stiffness and numbness in her hands from inflammatory arthritis and carpal tunnel syndrome, the ALJ found only occasional use of the bilateral hands appropriate.  (R33).  The ALJ noted that Plaintiff's family practitioner, Ms. Crim, recommended standing or walking six of eight hours and alternating sitting with standing.  (R33).  Therefore, the ALJ found a light exertional level appropriate with the option to sit or stand.  (R33).  The ALJ found that the opinions of Plaintiff's treating and examining medical professionals were consistent with her written decision and the record as a whole.  (R33).  The ALJ afforded the opinions of the medical professionals who examined Plaintiff considerable weight because these opinions reflected a longitudinal perspective of Plaintiff's impairment and were supported by medical signs and findings.  (R34).

However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the RFC assessment.  (R30).  In terms of Plaintiff's alleged more severe limitations, the ALJ did not find them fully credible.  (R34).  Plaintiff stated that she sometimes had to manually move some of her fingers when she could not feel or grip.  (R34).  Due to her medication and condition, Plaintiff reported she must alternate twenty minutes of activity with rest periods for the same length.  (R34).  Any type of walking prompted her to lie down for fifteen to twenty minutes.  (R34).  These severe limitations in activity – particularly the allegation that she can only do things twenty minutes at a time – were unsupported by medical evidence of record, functional reports, and opinion evidence.  (R34).  Throughout the relevant period, Plaintiff reported to Dr. Ozment that she experienced stiffness.  (R34).  However, Plaintiff experienced improvement because her overall stiffness always improved with activity (Exhibit 1F, page 1).

(R34).   She continued to maintain her household with several chores, though more slowly, perform errands, drive, and take care of her two grandchildren (Exhibits 4E, 8E).  (R34).

Despite Plaintiff's testimony regarding rheumatoid arthritis, Plaintiff's diagnosis appeared somewhat confused because on several occasions, including in September 2010, Dr. Ozment did not believe Plaintiff had rheumatoid arthritis (Exhibit 1F, pages 3, 6; Exhibit 2F, pages 30, 32; Exhibit 8F, page 3).  Rather, Dr. Ozment diagnosed her with an inflammatory case of osteoarthritis.  (R34).  In addition, Plaintiff declined more aggressive medication, and in January 2010, she reported that she was doing fine on over-the-counter Tylenol Arthritis (Exhibit 7F, page 8).  (R34).

In addition to reports of treatment efficacy, the ALJ also noted that physical examination findings were inconsistent with Plaintiff's most severe allegations.  (R34).  During the consultative examination, for example, Plaintiff was able to manipulate a small object fairly well – picking up a penny from the table – and pinch and grip strength remained 4+/5 (Exhibit 3F, pages 2-3).  (R34).  Pinprick testing showed decreased sensation in both hands consistent with carpal tunnel, but she showed intact sensation to light touch (Exhibit 3F, page 3).  (R34).  Dr. Ozment documented mild swelling in particular finger joints (Exhibit 10F, page 6).  The ALJ found that neither Dr. Ozment nor Plaintiff's family practitioner indicated findings consistent with Plaintiff's alleged incapacity.  (R34).

The ALJ also reviewed the opinion of the state agency medical consultant, who recommended less than the full range of light work, with frequent overhead reaching, frequent feeling, and frequent fingering bilaterally (Exhibit 4F).  (R35).  In light of Plaintiff's regular treatment and testimony, the ALJ gave this opinion little weight.  (R35).  The ALJ stated in her

decision that "though the range of light work appears appropriate, the allowance for frequent feeling and fingering is inconsistent with the objective and opinion evidence of record."  (R35).

In addition, pursuant to SSR 06-03p, the ALJ considered the non-medical opinions provided by two of Plaintiff's friends (Exhibits 12E, 13E).  (R35).  The descriptions of Plaintiff's functional difficulties were accorded some weight because the descriptions provided further context for Plaintiff's day-to-day activities.  (R35).  The summary opinions that Plaintiff could not work were given lesser weight, as the specific functional findings of Plaintiff's medical providers were more persuasive in this case.  (R35).

Therefore, the longitudinal treatment record, objective and clinical findings, and opinion evidence support the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  (R29, 35).  Because Plaintiff had limitations due to inflammatory arthritis and bilateral carpal tunnel syndrome, the RFC assessment limited her to light work with several additional manipulative and physical restrictions.  (R35).

### D.  ALJ's Determination that Plaintiff was Unable to Perform Any Past Relevant Work

The ALJ found that Plaintiff was unable to perform past relevant work, which included Plaintiff's previous employment as a housekeeper and nurse assistant (Exhibit 15E; Hearing Testimony).  (R35).  The VE testified that the demands of these positions exceed those provided in the RFC assessment.  (R35).  The VE testified that Plaintiff's past relevant work as a nurse assistant was semi-skilled with a specific vocational preparation (SVP) code of 4 and required the following skills:  record preparation and keeping and providing care for adults and children.  (R36).

### E. ALJ's Determination that Plaintiff was Capable of Performing Certain Jobs
###    in the National Economy

The ALJ determined that Plaintiff could not perform her past relevant work.  (R35). However, considering Plaintiff's age, education, work experience, and RFC, Plaintiff acquired work skills from past relevant work that could be transferred to other occupations with jobs existing in significant numbers in the national economy.  (R36).

In determining whether a successful adjustment to other work could be made, the ALJ must consider Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2).  (R36).  If Plaintiff could perform all or substantially all of the demands at a given level of exertion, the Medical-Vocational Guidelines direct a conclusion of either "disabled" or "not disabled," depending upon Plaintiff's specific vocational profile.  (R36).

The VE was asked if occupations existed which could be performed by an individual with the same age, education, past relevant work experience, and RFC as Plaintiff and which required skills acquired in Plaintiff's past relevant work.  (R36).  The VE testified that representative occupations such an individual could perform included the following:  case aide, an SVP-3 job with 100 to 150 positions in Northern Missouri, 3000 positions at the state level, and 350,000 positions in the national economy.  (R36).  The VE described the position as "modified light" and said the job used transferrable skills of record preparation as well as keeping and providing care for adults and children.  (R36).  The ALJ found that although Plaintiff's additional limitations did not allow the claimant to perform the full range of light work, considering Plaintiff's age, education, and transferable work skills, a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 202.22 and Rule 202.15.  (R37).

## II.     DISCUSSION

This suit involves a claim made for disability insurance benefits under Section 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  This action is a judicial review as provided by 42 U.S.C. § 405(g) brought to review the Appeals Council's decision of July 18, 2012, upholding the hearing examiner's decision of June 17, 2011, in which the ALJ denied Plaintiff's claim for Social Security benefits.  The issue before the Court is whether there is substantial evidence to support the Commissioner's decision as affirmed by the Appeals Council.

Plaintiff argued that the decision of the Commissioner was not supported by substantial evidence in that (1) the ALJ's finding that Plaintiff did not meet Listing 14.09(A)(2) is against the substantial evidence, (2) the ALJ violated SSR 96-8p by failing to consider the effect of Plaintiff's adjustment disorder on her ability to work, (3) the ALJ failed to comply with SSR 96-8p in assessing Plaintiff's RFC, (4) the ALJ committed reversible error in relying on VE testimony as Plaintiff's stated need for a limitation in lifting less than ten pounds conflicted with the DOT's description of the job the VE stated Plaintiff could perform, the requirement of a sit/stand option was not provided in the DOT's description of the job the VE stated Plaintiff could perform, and the Plaintiff's inability to write was in conflict with the DOT's description of the job the VE stated Plaintiff could perform, and (5) the ALJ's use of boilerplate language to determine Plaintiff's credibility was patently erroneous.

### A.  The ALJ's finding that Plaintiff did not meet Listing 14.09(A)(2) was not against the substantial evidence.

The first argument Plaintiff made in her Motion for Summary Judgment was that the ALJ's finding that Plaintiff does not meet Listing 14.09(A)(2) was against the substantial

evidence.  The Court finds the ALJ's finding that Plaintiff did not meet Listing 14.09(A)(2) was not against the substantial evidence.

When a plaintiff raises the issue of whether she meets a listing and provides a statement from the treating physician that reflects that she meets the medical conditions in the listing, the ALJ must at least articulate that she considered the listing and give reasons why the treating physician's evidence was rejected.  *Caldwell v. Barnhart*, 460 F. Supp. 2d 922, 926 (S.D. Ind. 2006) (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2002)).  Recent cases from the Seventh Circuit hold that where the ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and/or remand is required.  *Id.*

In this case, the ALJ considered the listing because in the written opinion, the ALJ noted that Listing 14.09(A)(2) requires inflammatory arthritis – as described in 14.00(D)(6) – with persistent inflammation or persistent deformity of one or more major peripheral joints in each upper extremity resulting in the inability to perform fine or gross movements effectively (as defined in 14.00(C)(7)).  Examples of inability to perform fine or gross movements effectively include the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.  (R28).  Plaintiff prepared simple meals, fed herself, bathed, dressed herself, and even cared for her grandchildren.  (R29).

The ALJ's written opinion demonstrated that she examined the medical record thoroughly before concluding that Plaintiff did not have an impairment or combination of impairments that met or medially equaled one of the listed impairments.  (R28).  For example, the ALJ considered evidence from the medical record where Plaintiff's family practitioner opined that Plaintiff was limited in handling, fingering, and feeling to an occasional basis

(Exhibit 11F, page 5).  (R28).  The ALJ stated that while the opinions of the family practitioner were credible, the opinions did not show "loss of effective fine and gross movements to the extent intended by the listing."  (R28).

To support her decision, the ALJ noted that Plaintiff had regular swelling in some fingers, but she was able to oppose the thumb to each finger on both hands (Exhibit 3F, page 3), and Plaintiff's pinch, arm, and grip strength were 4+/5 throughout.  (R29).  The ALJ also took into account that Plaintiff could bathe, care for personal hygiene, and feed herself by preparing simple meals, including sandwiches and frozen dinners.  (R29).  Plaintiff also completed laundry, vacuuming, mopping, and dusting, though at a slower pace.  (R29).  Therefore, based on the overall evidence, the ALJ did not find that Plaintiff's inflammatory arthritis met the requirements of Listing 14.09(A)(2).  The Court agrees with the ALJ's decision.

**B.  The ALJ did not fail to consider the effect of Plaintiff's adjustment disorder on her ability to work in violation of SSR 96-8p.**

Second, Plaintiff argued the ALJ violated SSR 96-8p by failing to consider the effect of Plaintiff's adjustment disorder on her ability to work.  The Court finds that the ALJ did not dismiss Plaintiff's psychological condition, but considered it thoroughly by examining medical records, testimony, reports, and the four broad functional areas outlined in the disability regulations.

In Plaintiff's initial application and at both levels of appeal, Plaintiff did not report any disabling difficulties arising out of a mental health condition (Exhibits 2E, 7E, 10E).  (R27).  In addition, Plaintiff did not testify to any adjustment difficulties or anxiety symptoms at the hearing.  (R27).  In her function report, Plaintiff indicated she spent a typical day getting her two

grandchildren ready for school, doing laundry, dishes, eating dinner, feeding the children, bathing them, and putting them to bed (Exhibit 4E, page 1).  (R27).  She also indicated in her function report that she went outside every day, drove a car, was able to go out alone, shopped once a week for two hours, and handled money (Exhibit 4E, page 4).  (R27).  Her hobbies included growing houseplants, reading, and watching television (Exhibit 4E, page 5).  (R27). She talked on the phone for about fifteen minutes per day, went to the children's school regularly, and attended church.  (R27).  She could pay attention for as long as needed and followed all instructions well (Exhibit 4E, page 6).

A more recent function report indicated many of the same activities, with the greatest limitation described as relating to her hands and joint pain (Exhibit 8E).  (R27).  Plaintiff reported no problems paying attention, getting along with others, handling changes in routine, or following instructions (Exhibit 8E, pages 6-7).  (R27).  Plaintiff reported that when she felt very stressed and depressed due to her inability to do what she used to, she cried easily and seemed more grouchy and anxious (Exhibit 8E, page 7).  (R27).

After examining the function reports, the ALJ considered the medical record.  Plaintiff's family practitioner and rheumatologist records included no mention of mental health difficulties. (R27).  On April 7, 2010, Plaintiff was referred to Mental Health Centers of Western Illinois by the Arthritis Foundation of Quincy to seek an evaluation of her anxiety (Exhibit 6F, pages 4, 11). (R27).  Plaintiff reported that she thought getting an evaluation would reinforce her appeal for Social Security benefits but did not recognize the need for counseling (Exhibit 6F, page 12). (R27).  She was recommended for individual outpatient counseling to deal with anxiety, pain management, and a stressed relationship with her boyfriend.  (R27).  She was diagnosed with

adjustment disorder with anxiety.  (R27).  She did not meet any serious impairment criteria, including serious impairment in social, occupational, or school functioning.  (R27).

On May 19, 2010, Plaintiff arrived for her first appointment with a therapist.  (R27).  She said she did not know why she was there for an appointment because she only desired an evaluation for achieving disability benefits.  (R27).  She decided to talk with her lawyers to receive further clarification.  (R27).  The therapist agreed to wait to hear from her to determine if her file should be kept active or closed.  (R27).  There are no additional records, and the ALJ presumed that Plaintiff chose to discontinue counseling.  (R27).  Plaintiff did not meet any serious impairment criteria and experienced no episodes of decompensation of extended duration.  (R28).  There was no allegation of or any evidence showing such episodes.  (R28).

When an ALJ denies benefits, she must build an "accurate and logical bridge" from the evidence to conclusion.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).  Here, the ALJ considered whether Plaintiff's adjustment disorder affected her ability to work.  (R26).  SSR 96-8p requires considering the impact of both severe and non-severe impairments on work.  The ALJ did not include any mental functioning restrictions in her RFC finding because she determined that Plaintiff's adjustment disorder was not severe in that it did not minimally interfere with basic work activities.  In making this finding, the ALJ considered Plaintiff's testimony and reports, medical evidence, and the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  (R27).  The four broad functional areas include:  (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation.  (R27).  The ALJ did not find a limitation in any area because Plaintiff

maintained a typical day with childcare, handled money, saw friends, talked on the phone, had no problem following instructions or getting along with people, drove a car, and maintained a household limited only by her arthritic condition. (R27-28) Because Plaintiff's mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation of extended duration in the fourth area, it was nonsevere.

### C.  The ALJ complied with SSR 96-8p in assessing Plaintiff's RFC.

Plaintiff also contends the ALJ failed to comply with SSR 96-8p in assessing her RFC. Specifically, Plaintiff argued the ALJ did not take into account that it was difficult for Plaintiff to write. Plaintiff testified that she was unable to hold a pen in her hand because she had to use her pinky and ring finger to grasp a pen. Due to Plaintiff's writing difficulties, Plaintiff attested that she could not perform as a case aide because writing is a part of the position.

An ALJ makes a RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 SSR LEXIS 5. In doing so, an ALJ must determine what weight to give the opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight so long as it is well-supported by medical findings and is consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If an ALJ does not give controlling weight to a treating source's opinion, she must then determine how much weight it should carry. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Moreover, if the ALJ discounts a treating physician's opinion, the Court "must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his [or her] reasons – a very deferential standard that we have,

in fact, deemed lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Here, the ALJ's determination that Plaintiff had a RFC to perform light work was well-supported by medical findings and was consistent with substantial evidence in the record.  In formulating her decision, the ALJ considered the longitudinal treatment record.  The opinions of Plaintiff's treating and examining medical professionals were consistent with the record as a whole.  The ALJ accorded the opinions considerable weight because the opinions reflected a longitudinal perspective of Plaintiff's impairments, were given by professionals who examined Plaintiff, and were supported by medical signs and findings.  The ALJ's written opinion demonstrated that she considered the opinions of Ms. Crim, Plaintiff's family practitioner, and Dr. Ozment, who Plaintiff was referred to for a rheumatology consultation.  (R29-35).   The Court finds that the ALJ's RFC determination and her ultimate decision to conclude that the RFC assessment limits her to light work with several additional manipulative and physical restrictions are supported by substantial evidence and are sufficiently articulated in compliance with 20 C.F.R. § 404.1527(d).


**D.  The ALJ did not err in relying on the VE's testimony because the testimony did not conflict with the DOT's description of the job of case aid.**

Fourth, Plaintiff argued the ALJ committed reversible error in relying on the VE's testimony because the testimony conflicted with the Dictionary of Occupational Titles ("the DOT").  Plaintiff contended the ALJ committed reversible error in (1) relying on the VE's testimony as Plaintiff's stated need for a limitation in lifting less than ten pounds because the VE's testimony conflicted with the DOT's description of the case aid position, (2) the

requirement of a sit/stand option was not provided in the DOT's description of the case aid position, and (3) the Plaintiff's inability to write was in conflict with the DOT's description of the case aid position.

"Courts disagree about the appropriate interaction between the Dictionary [of Occupational Titles] and a vocational expert." *Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002). In *Donahue*, the Seventh Circuit stated it had not faced the issue squarely and had never articulated a rule of decision. *Id.* In *Donahue*, a claimant sought judicial review of the Commissioner's decision to deny supplemental security income on the basis that he was not disabled. *Id.* at 441. The Seventh Circuit held that the ALJ was entitled to accept the VE's testimony regarding the jobs that a disabled person could perform, even if such testimony conflicted with the Dictionary of Occupational Titles. *Id.* "The Dictionary of Occupational Titles is published by the Department of Labor as a tool; it does not purport to contain rules of law, and no statute or regulation gives it binding force." *Id.* at 445. "In determining whether a supplemental security income (SSI) claimant is disabled, the administrative law judge (ALJ) must be entitled to accept testimony of a vocational expert whose experience and knowledge in a given situation exceeds that of the authors of the Department of Labor's Dictionary of Occupational Titles." *Id.* at 446.

In determining whether a successful adjustment to other work can be made, the ALJ must consider Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. (R36). The VE was asked if any occupations existed which could be performed by an individual with the same age, education, past relevant work experience, and RFC as Plaintiff. (R36). The VE testified that a position as a case aid would accommodate Plaintiff's limitations. (R36). The VE described the

position as "modified light."  (R36).  The VE testified that the job as a case aid would allow Plaintiff to use her transferrable skills of record preparation as well as keeping and providing care for adults and children.  (R36).  The VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles, and the VE explained the ways that her observation of the job fit the RFC assessment.  Therefore, the Court finds that the ALJ did not commit reversible error by relying on the VE's testimony and that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 202.22 and Rule 202.15.

### E. The ALJ's use of boilerplate language to communicate her determination of Plaintiff's credibility was not patently erroneous.

Finally, Plaintiff argued that in determining Plaintiff's credibility, the ALJ used boilerplate language.  Specifically, Plaintiff pointed out that the ALJ wrote in her written decision:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  (R30).

"The simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he [or she] otherwise points to information that justifies his [or her] credibility determination."  *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013).  Immediately following the use of what Plaintiff contended was boilerplate language, the ALJ provided a paragraph discussing the longitudinal treatment record and the medical evidence provided by Plaintiff's family practitioner and rheumatologist.  The Court finds that the ALJ provided sufficient evidence for concluding that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of the symptoms were not credible.  Therefore, the Court finds that the ALJ's use of boilerplate language to communicate her determination of Plaintiff's credibility was not patently erroneous.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [ECF No. 13] is DENIED and the Commissioner's Motion for Summary Affirmance [ECF No. 14] is GRANTED.  This case is now terminated.

Entered this 16th day of September, 2013.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge